IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CARMILLIA WALLACE and | § | |
| JERRY WALLACE | § | PLAINTIFFS |
| | § | |
| V. | § | Civil No. 1:08CV1460-HSO-JMR |
| | § | |
| ALLSTATE INSURANCE | § | |
| COMPANY | § | DEFENDANT |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ALLSTATE INSURANCE COMPANY'S FIRST SET OF MOTIONS *IN LIMINE*

BEFORE THE COURT is the First Set of Motions *in Limine* [40] filed on November 17, 2009, by Defendant Allstate Insurance Company ["Allstate"]. Plaintiffs Carmillia Wallace ["Mrs. Wallace"] and Jerry Wallace ["Mr. Wallace"] [collectively, "Plaintiffs"] have filed a Response [45], and Allstate has filed a Rebuttal [49]. After consideration of the parties' submissions, the record, and the relevant legal authorities, and for the reasons discussed below, the Court finds that Allstate's First Set of Motions *in Limine* [40] should be granted in part and denied in part.

## I. DISCUSSION

Allstate seeks to exclude from the trial in this case the following: (A) evidence and testimony of medical treatment costs and lost wages/income of Mrs. Wallace; (B) evidence of uninsured motorist insurance policy limits; (C) testimony of the Mississippi Highway Patrol investigating officer as to the cause or contributing circumstances of the accident; (D) introduction of the automobile accident report; (E) evidence or testimony from Mr. Scott Belham which reflects any opinions of

Mrs. Wallace's treating physicians; (F) evidence or testimony from Mr. Timothy Haller which reflects any opinions of Mrs. Wallace's treating physicians; (G) evidence or testimony of Dr. Horrell Townsend beyond his personal knowledge which reflects any opinions of Mrs. Wallace's treatment; (H) any evidence of offers to compromise; (I) evidence or testimony of Mrs. Wallace's treating medical providers which comprises any expert opinions; (J) Plaintiffs' or their counsel's mentioning Allstate's use of courtroom technology during voir dire or trial; (K) any records which have not been previously stipulated as authentic by both parties as self-authenticating; (L) evidence or testimony consisting of any claim for lost wages or income by Mr. Wallace; and (M) any evidence or testimony which would tend to support any claim by Mrs. Wallace for permanent disability. *See* Allstate's First Set of Mots. *in Limine*, at pp. 1-10.

A. <u>Medical Treatment Costs and Lost Wages/Income</u>

Allstate contends that the Court should preclude any evidence or mention of Mrs. Wallace's medical expenses and lost wages/income for which she has received compensation. *See* Allstate's First Set of Mots. *in Limine*, at pp. 1-3. Allstate maintains that, under Louisiana law, it is a solidary obligor with the workers' compensation carrier, *see id.* at p. 1, such that the collateral source rule does not apply, and that Plaintiffs should be prohibited from introducing evidence of medical expenses and lost wages/income for which she received compensation from the workers' compensation carrier, *see id.* at pp. 1-3.

Plaintiffs counter that Allstate is seeking to prevent Mrs. Wallace from

proving her damages to the jury, and is attempting to obtain a credit on the verdict as a solidary obligor. *See* Pls.' Mem. in Opp'n, at p. 1. Plaintiffs assert that the question is not whether Allstate is entitled to a credit for the workers' compensation benefits, but rather, whether evidence of medical bills or lost wages is admissible for jury consideration. *See id.* at p. 3. According to Plaintiffs, the "collateral source rule" under Mississippi law controls this question, rather than Louisiana law. Under this rule, Allstate is not entitled to have damages for which it is liable reduced. *See id.* at pp. 3-4. Plaintiffs nevertheless argue that, even if the Court determines that Allstate is entitled to a credit as a solidary obligor, this does not prevent them from being permitted to fully present evidence of their damages to the jury at trial. *See id.* at p. 4.

1. Conflict of Laws

The insurance policy itself does not contain a choice of law provision. Sitting in diversity, a district court must apply the choice of law rules of the forum state to determine which state's substantive law applies. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007). The forum state, Mississippi here, resolves choice of law issues by applying the following steps: (1) determine whether the laws at issue are substantive or procedural; (2) if substantive, classify the laws as either tort, property, or contract; and (3) look to the relevant section of the Restatement (Second) of Conflict of Laws. *See Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 433-34 (Miss. 2006).

a. Substantive or Procedural Laws

The law of the forum determines whether an issue in the action is substantive or procedural in nature. *See Hartford Underwriters Ins. Co. v. Foundation Health Services Inc.*, 524 F.3d 588, 593 (5th Cir. 2008). In *Zurich*, the Mississippi Supreme Court noted that only a few laws are procedural, and that beyond the Mississippi Rules of Civil Procedure and Evidence, the Court had only found the definition of "procedural" to include statutes of limitations, awards of attorney's fees, and awards of prejudgment interest. *See Zurich*, 920 So. 2d at 433.

The issue presented in this case is whether Allstate receives a credit for medical and disability wage benefits paid by workers' compensation. The Court is of the view that this poses a substantive legal question on damages, especially given the limited instances in which Mississippi courts have found issues to qualify as "procedural" in nature. *See id.*

b. Classification of Substantive Law

The Court must next classify the substantive area of law applicable to the case. *See Hancock v. Watson*, 962 So. 2d 627, 629 (Miss. Ct. App. 2007). The question here is whether the law involved sounds in tort or contract. Allstate contends that this matter sounds in contract. *See* Allstate's Reply in Supp. of its Mot. for Partial Summ. J., at pp. 2-6. In their briefing, Plaintiffs cite sections of the Restatement dealing with both tort and contract. *See* Pls.' Mem. in Opp'n to Mot. for Partial Summ. J., at pp. 2-4.

The dispute between Allstate and Plaintiffs has its genesis in Mrs. Wallace's

employer's uninsured motorist insurance contract with Allstate. Allstate is not an alleged tortfeasor under these circumstances. Rather, the suit against it arises out of its contract with Mrs. Wallace's employer. Were it not for the existence of this contract, Plaintiffs would have no cause of action against Allstate. The Court is therefore of the opinion that the issue presented sounds in contract. *See Powe v. Roy Anderson Const. Co.*, 910 So. 2d 1197, 1203-04 (Miss. Ct. App. 2005).

### c. <u>Application of Relevant Restatement Sections</u>

"Two controlling sections of the Restatement have been adopted in Mississippi-section 188 governing contracts in general and section 193 governing casualty insurance contracts." *Zurich*, 920 So. 2d at 434. Mississippi courts have applied section 193 to actions on insurance contracts, including uninsured motorist coverage. *See Baites v. State Farm Mut. Auto. Ins. Co.*, 733 So. 2d 320, 323 (Miss. Ct. App. 1998). However, if certain conditions set forth in comment b to section 193 are met, Mississippi courts apply section 188 to casualty insurance contracts, rather than section 193. *See Zurich*, 920 So. 2d at 435. As discussed in greater detail below, the Court need not resolve which section governs here, since under either section 188 or 193, the result is the same.

The Restatement (Second) of Conflict of Laws Section 193 provides that

[t]he validity of a contract of fire, surety or casualty insurance and the right created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in §6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of laws §193.

The Restatement (Second) of Conflict of Laws Section 6 provides, in relevant part, that choosing the applicable rule of law includes a consideration of

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws §6.

Comment b to section 193 provides in relevant part that

[a]n insured risk, namely the object or activity which is the subject matter of the insurance, has its principal location, in the sense here used, in the state where it will be during at least the major portion of the insurance period . . . . *So, in the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at least during most of the period in question.*
*   *   *
*The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state. Situations where this cannot be done, and where the location of the risk has less significance, include (1) where the insured object will be more or less constantly on the move from state to state during the term of the policy and (2) where the policy covers a group of risks that are scattered throughout two or more states.* The importance of the risk's principal location will also vary somewhat from case to case. It enjoys greatest significance when an immovable is involved, such as when the risk insured against is damage by fire to a particular building. In the case of chattels, the significance of the state of the risk's principal location diminishes with the length of time that it can be anticipated the chattel will be in other states during the term of the insurance. Provided, however, that the risk will be in a particular state for the major portion of the insurance period,

> the risk's principal location is the most important contact to be considered in the choice of the applicable law, at least as to most issues.

Restatement (Second) of Conflict of Laws § 193 cmt. b (emphasis added).

If the above exception delineated in section 193 applies, the determination of which law controls is resolved instead under section 188. *See Zurich*, 920 So. 2d at 435. Restatement section 188 provides that the law that "has the most significant relationship to the transaction and the parties" should control. *See* Restatement (Second) of Conflict of Laws § 188. Section 188 lists several factors to be considered in resolving which state has the most substantial relationship to the parties and the dispute: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties. *See id.* "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.* The Mississippi Supreme Court has not applied this test in a mathematical or mechanical fashion, and uses the factors as a "practical" way to determine the center of gravity of a contract issue. *See Zurich*, 920 So. 2d at 435. "If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203." Restatement (Second) of Conflict of Laws § 188.

d. <u>The Policy Language</u>

The Policy at issue identifies Baton Rouge, Louisiana, as the "Garaging City" for the twenty-two automobiles it covers. *See* Policy [20-1], at pp. 6-10, attached as Ex. "A" to Allstate's Mot. for Partial Summ. J. It is evident from the Policy that Allstate and Mrs. Wallace's employer understood that the principal location of the insured risk was Louisiana. In fact, the uninsured motorist coverage from which Plaintiffs' cause of action springs is an endorsement entitled "LOUISIANA UNINSURED MOTORISTS COVERAGE – BODILY INJURY." *See id.* at p. 29. This endorsement provides coverage "[f]or a covered 'auto' licensed or principally garaged in, or 'garage operations' conducted in, Louisiana . . . ." *Id.* at p. 29. The Policy is replete with references to Louisiana. *See id. passim.*

It is clear in this case that the parties to the Policy understood that Louisiana was to be the principal location of the insured risk during the term of the Policy. *See* Restatement (Second) of Conflict of Laws § 193. Application of the principles contained in section 6 of the Restatement (Second) of Conflict of Laws demonstrates, in the Court's view, that Louisiana has a more significant relationship to the transaction and the parties. Alternatively, considering the factors contained in section 188, Louisiana bears the most substantial relationship to the parties and the dispute, and is the center of gravity of the contract in this case. *See* Restatement (Second) of Conflict of Laws § 188. Therefore, applying either section 188 or 193, the Court is persuaded that the local law of Louisiana

should govern.  *See* Restatement (Second) of Conflict of Laws §§ 188, 193.

    2.  Evidence of Medical Treatment Costs and Lost Wages/Income

Plaintiffs point out that, even if Louisiana law entitles Allstate to a credit for certain sums paid to, and umreimbursed by, Mrs. Wallace, the real issue for the Court at this juncture is the distinct evidentiary question of whether proof of Plaintiffs' damages is admissible at trial.  The Court is of the opinion that, while Louisiana law applies to the question of whether and to what extent Allstate receives a credit,[1] Allstate has not demonstrated that evidence of these elements of Plaintiffs' damages are inadmissible under the Federal Rules of Evidence. Plaintiffs are entitled to prove their damages, and the Court is of the opinion that such evidence of their damages is relevant and not prejudicial.  Although the Court agrees with Allstate's argument that Louisiana law ultimately controls the issue of the extent of any credit, this portion of its First Set of Motions *in Limine* must be denied as an evidentiary matter.  *See* Fed. R. Evid. 401, 402, 403.  The Court will address objections to specific exhibits, as delineated in the Pretrial Order, at trial.

B.  Uninsured Motorist Insurance Policy Limits

Allstate seeks to exclude any evidence of insurance limits, including the uninsured motorist policy limits.  Allstate maintains that such evidence is highly

---

[1]  The Court notes that there must first be a conflict of laws for this analysis to apply.  Absent an actual conflict, the law of the forum state applies.  *See Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 620 (5th Cir. 2005).  The parties seem to agree that there is a conflict between Mississippi and Louisiana law as it relates to unreimbursed benefits paid to Mrs. Wallace.  However, the parties have not fully addressed the issue with respect to portions of workers' compensation benefits which Mrs. Wallace has apparently repaid to the carrier.

prejudicial and that its introduction would violate Federal Rules of Evidence 402 and 403. *See* Allstate's First Set of Mots. *in Limine*, at pp. 3-4. Plaintiffs argue that the existence and amount of coverage is required proof as an element of Plaintiffs' contractual claim against Allstate. *See* Pls.' Mem. in Opp'n, at p. 5. Plaintiffs state, however, that if Allstate stipulates to the coverage amount and the applicability of this loss, they do not object to the Court granting this portion of the Motion. *See id.* In Rebuttal, Allstate states that the Policy limits speak for themselves, and that it would stipulate to the Policy's applicability to Plaintiffs' losses subject to the exclusions as set forth in its Motion for Summary Judgment and related briefing. *See* Rebuttal, at p. 4. Allstate reiterates that evidence of Policy limits should be excluded. *See id.*

The Court is of the opinion that the limits of coverage are not probative of the issue of damages, absent a controversy over the amount of coverage itself. *See Jordan v. Ivy*, 2007 WL 1071402, *2 (N.D. Miss. April 4, 2007); *see also* Fed. R. Evid. 401; 402. Even if relevant, the Court finds that this evidence would be unduly prejudicial, misleading, and confusing to a jury, and is of little to no probative value to the claims in this case. *See* Fed. R. Evid. 403. Allstate's First Set of Motions *in Limine* will therefore be granted as to evidence of the Policy limits.

C. <u>Testimony of Investigating Officer</u>

Allstate asks that any testimony by the investigating Officer, M. Santa Cruz ["Officer Santa Cruz"], of the Mississippi Highway Patrol as to the cause of this

accident be excluded. *See* Allstate's First Set of Mots. *in Limine*, at p. 4. Allstate argues that Officer Santa Cruz was not an eyewitness, and that any testimony from him on the subject of causation would constitute inadmissible hearsay. *See id.* Plaintiffs respond that they do not intend to elicit Officer Santa Cruz's opinion as to the cause of the accident, but plan to offer his testimony as a lay or expert witness in accident investigation. *See* Pls.' Mem. in Opp'n, at p. 5.

The Court fails to see the relevance of Officer Santa Cruz's testimony, as this case appears to be a "pocketbook dispute" in light of Plaintiffs' settlement with the alleged third-party tortfeasor. Unless there is some remaining question of liability, the Court is of the opinion that this evidence would be irrelevant and inadmissible under Federal Rule of Evidence 402. Moreover, if liability is not an issue, any relevance would be substantially outweighed by confusion of the issues or misleading the jury, rendering the testimony inadmissible under Rule 403. Because it is not entirely clear from the record whether a question as to liability remains in controversy, the Court will reserve ruling on this portion of Allstate's Motions.

D. <u>Automobile Accident Report</u>

Allstate also seeks exclusion of the Uniform Crash Report prepared by Officer Santa Cruz. *See* Allstate's First Set of Mots. *in Limine*, at pp. 4-5. Allstate maintains that the Report is inadmissible hearsay, and that the Report is irrelevant, as this action is now simply a damages dispute. *See id.* Allstate also contends that admission of the Report would only inflame the jury toward Allstate

for Mr. Capuano's negligence. Plaintiffs counter that *Copeland v. City of Jackson,* 548 So. 2d 970, 975 -76 (Miss. 1989), and its progeny specifically provide for the admissibility of the Report. *See* Pls.' Mem. in Opp'n, at p. 5.

The Court notes that *Copeland* applied the Mississippi Rules of Evidence to determine the admissibility of police reports. The Federal Rules of Evidence govern here. Moreover, as with the proposed testimony of Officer Santa Cruz, the Court fails to see the relevance of the Uniform Crash Report in this case. Unless there is some remaining question of liability, the Court is of the opinion that this evidence would be inadmissible under Federal Rules of Evidence 402 and 403. The Court will therefore reserve ruling on this portion of Allstate's Motions.

E. <u>Testimony of Mr. Scott Belham</u>

Allstate asks the Court to exclude any evidence or testimony from Mr. Scott Belham ["Mr. Belham"] which reflects any opinions of Mrs. Wallace's treating physicians. Allstate maintains that Mr. Belham's deposition testimony reveals that his knowledge is limited solely to a functional capacity evaluation. *See* Allstate's First Set of Mots. *in Limine*, at p. 5. Allstate further asks that Mrs. Wallace's treatment records be redacted. *See id.* Plaintiffs respond that Mr. Belham is an expert physical therapist who will be offered to testify about the functional capacity evaluation he performed on Mrs. Wallace. *See* Pls.' Mem. in Opp'n, at p. 6.

Plaintiffs also generally object to Allstate's requests to "exclude any evidence or testimony which reflects any opinion of Mrs. Wallace's treating physicians" and

that "any opinion contained within Mrs. Wallace's treatment records be properly redacted." *Id.* at p. 7. Plaintiffs argue that this is an overly broad and ambiguous request, in that Allstate fails to identify specific portions of the medical records or opinions that Allstate finds objectionable. *See id.* Plaintiffs also assert that "the Federal Rules of Evidence permit an expert to testify, based on information 'by or made known to the expert at or before the hearing.'" *Id.* (*quoting* Fed. R. Evid. 703). Plaintiffs contend that their expert designations "make clear that each of [their] experts will testify based on 'his review of medical records and test results provided and to be provided prior to trial and any other facts made known to him at the time of or prior to his testimony.'" *Id.* (*quoting* Pls.' Desig. of Experts [12]).

The Court will not permit experts to testify beyond the scope of their disclosures and depositions, but at this point, the Court is unable to assess whether Mr. Belham's opinions and testimony are admissible based upon Allstate's broad objection. This portion of the First Set of Motions *in Limine* will be denied without prejudice to Allstate's right to reassert in objections at trial or to specific exhibits presented in the Pretrial Order.

F. Testimony of Mr. Timothy Haller

Allstate seeks exclusion of any evidence or testimony from Mr. Timothy Haller ["Mr. Haller"] which reflects any opinion of Mrs. Wallace's treating physicians, whether through oral testimony or within Plaintiffs' medical records. Allstate asserts that Mr. Haller's deposition testimony reflects that his knowledge

is limited to the physical therapy he rendered to Mrs. Wallace and to his physical therapy records. *See* Allstate's First Set of Mots. *in Limine*, at p. 6. Allstate repeats its earlier request that treatment records be redacted. *See id.* Plaintiffs respond that Mr. Haller provided physical therapy treatment to Mrs. Wallace, and that they will offer him as an expert to testify about his treatment of Mrs. Wallace and the results of that treatment. *See* Pls.' Mem. in Opp'n, at p. 6.

Again, the Court notes that experts will not be allowed to testify beyond the scope of their disclosures and depositions, but the Court is unable to resolve whether Mr. Haller's opinions and testimony are admissible based upon Allstate's broad objection. This portion of the First Set of Motions *in Limine* will be denied, without prejudice to Allstate's right to reassert at trial or in objections to specific exhibits presented in the Pretrial Order.

G. Testimony of Dr. Horrell Townsend

Allstate asks the Court to exclude any evidence or testimony from Dr. Horrell Townsend, D.O. ["Dr. Townsend"], beyond his personal knowledge. *See* Allstate's First Set of Mots. *in Limine*, at pp. 6-7. Allstate again asks that treatment records be redacted. *See id.* at p. 7. Plaintiffs counter that Dr. Townsend is a medical doctor of osteopathy, that he was one of Mrs. Wallace's treating physicians, and that he will be offered to testify as to his medical care, evaluation, and treatment of her. *See* Pls.' Mem. in Opp'n, at p. 6. Dr. Townsend received and reviewed medical records and reports and ultimately referred Mrs. Wallace to an orthopedic surgeon.

*See id.*

The Court cannot assess whether Dr. Townsend's opinions and testimony are admissible based upon Allstate's broad objections. This portion of the First Set of Motions *in Limine* will also be denied, without prejudice to Allstate's right to reassert at trial or in objections to specific exhibits presented in the Pretrial Order.

H. <u>Offers to Compromise</u>

Allstate states that it has made good faith tenders to Plaintiffs as required by the Louisiana Code. *See* Allstate's First Set of Mots. *in Limine*, at p. 7. Allstate requests that the Court exclude any evidence of such offers to compromise pursuant to Federal Rule of Evidence 408(a)(1) and (2). *See id.* Plaintiffs state that they have no objection to this Motion, but request that both Plaintiffs and Allstate be prohibited from mentioning Allstate's prior tenders. *See* Pls.' Mem. in Opp'n, at p. 7. In Rebuttal, Allstate states that it "does not oppose that neither party may mention any offers to compromise, or the tendering of valuable consideration as required under the Louisiana Code and as demanded by the Plaintiffs, at any time during voir dire or during the trial of this matter." Rebuttal, at p. 7. The Court will therefore grant this portion of the First Set of Motions *in Limine* as unopposed. All parties will be prohibited from mentioning any prior tenders by Allstate.

I. <u>Treating Medical Providers</u>

Allstate seeks to limit the testimony of Mrs. Wallace's treating physicians. *See* Allstate's First Set of Mots. *in Limine*, at pp. 7-8. It argues that a treating

physician may only testify as to facts contained within a patient's medical records, and may not testify as to his opinion of how those facts affect the patient unless he has been designated as an expert. *See id.*

Plaintiffs contend that, pursuant to the Uniform Local Rules of this Court, they may designate treating physicians as experts, but are only required to provide the facts known and opinions held by the treating physicians and a summary of the grounds therefor. *See* Pls.' Mem. in Opp'n, at p. 9 (*citing* Rule 26.1(A)(2)(d)).[2] They maintain that their designations and disclosures have exceeded this requirement. In its Rebuttal, Allstate agrees that non-retained experts are not required to provide a written report. *See* Rebuttal, at p. 7. Allstate therefore withdraws its request to that extent. However, it argues that the physicians' testimony should nevertheless be limited to their treatment records. *See id.*

As the United States District Court for the Northern District of Texas has recognized,

> [a]lthough the Fifth Circuit has not specifically identified the circumstances under which a treating physician would be required to disclose a written report, district courts in this circuit have generally concluded that the treating-physician exception applies only to opinion testimony based on the physician's personal knowledge of the examination and treatment of the party. If the opinion testimony is based on information learned outside the course of treatment, a written report is required.

---

[2] The Court notes that the Rule cited by Plaintiffs is no longer in effect, as new Uniform Local Civil Rules of this Court became effective December 1, 2009, after filing of the expert designations in this case. However, the substance of new L.U. Civ. R. 26(a)(2)(D) is the same as the former version cited by Plaintiffs.

*Lee v. Valdez*, 2008 WL 4287730, *3 (N.D. Tex. Sept. 18, 2008) (*citing Martin v. Geico Gen. Ins. Co.*, 2002 WL 34370891, at *1 (N.D. Tex. Apr.15, 2002); *Lowery v. Spa Crafters, Inc.*, 2004 WL 1824380, at *2 (W.D. Tex. Aug.16, 2004); *Boudreaux v. J.P. Morgan Chase & Co.*, 2007 WL 4162908, at *2 (E.D. La. Nov.21, 2007); *Duke v. Lowe's Homes Ctrs., Inc.*, 2007 WL 3094894, at *1 (N.D. Miss. Oct.19, 2007)).

Treating physicians are thus limited to those opinions set forth in their office records, unless a written expert report signed by the treating physician is provided, as required by the Federal Rules of Civil Procedure and the Uniform Local Rules of this Court. *See Francois v. Colonial Freight Systems, Inc.*, 2007 WL 4564866 (S.D. Miss. Dec. 21, 2007) (*quoting Robbins v. Ryan's Family Steak Houses East, Inc.,* 233 F.R.D. 448, 453 (S.D. Miss. 2004)). However, treating physicians will be allowed to testify to the extent that their testimony is based upon knowledge acquired during the course and scope of treatment of Mrs. Wallace. *See id.*; *see also E.E.O.C. v. SFAILA, LLC*, - - - F. Supp. 2d - - - -, 2009 WL 3378959, *6 (E.D. La. Oct. 21, 2009) (holding, in an order on parties' motions for summary judgment, that a treating physician, who is not a retained expert, may testify only about the actual treatment rendered and opinions derived therefrom, and that to the extent that certain statements made by the treating physician exceed the scope of his treatment and therefore constitute expert opinions, or are not otherwise made on personal knowledge, the Court will disregard those statements); *Knorr v. Dillard's Store Servs. Inc.*, 2005 WL 2060905, *3 (E.D. La. Aug. 22, 2005) (stating that "[a] treating physician may testify to his opinions about a plaintiff's injuries if his testimony is based on knowledge acquired during the course of his treatment of the plaintiff.... A

written report is therefore not required for a treating physician whose testimony and opinions derive from information learned during actual treatment of the patient, rather than from subsequent evaluation as a specially retained expert."). This portion of Allstate's First Set of Motions *in Limine* will therefore be denied.

## J.  Courtroom Technology

Allstate asks the Court to prohibit Plaintiffs or their counsel from referencing Allstate's use of courtroom technology, such as a projector screen, projector, and a computer program.  *See* Allstate's First Set of Mots. *in Limine*, at p. 8.  Allstate maintains that portraying it or its counsel as parties who are able to afford this technology is highly prejudicial and should be foreclosed under Federal Rules of Evidence 402 and 403.  *See id.*  Plaintiffs respond that they "certainly do not intend to criticize anyone for the use of technology."  Pls.' Mem. in Opp'n, at p. 10.  The Court will therefore grant this portion of the First Set of Motions *in Limine* as unopposed, and the parties and their counsel will be prohibited from mentioning the use of courtroom technology.

## K.  Records Not Previously Stipulated as Authentic

Allstate seeks exclusion of any medical records, or any attempt to introduce any medical records, that have not been previously stipulated as authentic by both parties.  *See* Allstate's First Set of Mots. *in Limine*, at p. 8.  Allstate argues that Federal Rule of Evidence 902(11) requires Plaintiffs to provide Allstate adequate notice for any intent to introduce medical records as self-authenticating business

records to avoid being barred as hearsay pursuant to Rule 803(6). *See id.* Plaintiffs counter that, while Rule 902(11) is a method for facilitating the admissibility of evidence through self-authenticating records, Plaintiffs may nevertheless attempt to introduce records after authenticating them by other means. *See* Pls.' Mem. in Opp'n, at p. 10. In its Rebuttal, Allstate insists that "any records not stipulated as authentic must be self-authenticating. [sic] Otherwise, Allstate objects to the introduction of such records as heresay [sic] and unauthentic." Rebuttal, at p. 8.

The Court agrees with Plaintiffs that certain records may be admissible, even if not self-authenticated under Rule 902, if other permissible extrinsic evidence of authenticity is provided as a condition precedent to admissibility. *See* Fed. R. Evid. 901. This portion of Allstate's First Set of Motions *in Limine* is therefore not well taken and will be denied. The Court will address objections to specific exhibits, as delineated in the Pretrial Order, at trial.

L. <u>Any Claim for Lost Wages or Income by Mr. Wallace</u>

Allstate submits that Mr. Wallace has not asserted any claims for lost wages or income as a result of his wife's injuries, or provided any documents establishing that he is entitled to such compensation. *See* Allstate's First Set of Mots. *in Limine*, at p. 9. Allstate therefore seeks to exclude any evidence or testimony supporting any claim for lost wages or income of Mr. Wallace. *See id.* Plaintiffs state that they do not intend to offer evidence of wage loss by Mr. Wallace. *See* Pls.' Mem. in Opp'n, at p. 10. The Court will therefore grant this portion of the First Set of

Motions *in Limine* as unopposed.

M.  Claim for Permanent Disability

Allstate asserts that Mrs. Wallace has come forward with no evidence of a permanent disability during the discovery phase of this litigation. *See* Allstate's First Set of Mots. *in Limine*, at p. 9. It requests that the Court exclude any evidence or testimony that would tend to support any claim for permanent disability. *See id.* at p. 10. Plaintiffs counter that they have "come forward with evidence of both anatomic impairment and physical limitations and disability related to the collision." Pls.' Mem. in Opp'n, at p. 10. Plaintiffs argue that both of Mrs. Wallace's primary treating physicians have opined that her injury is permanent. *See id.* at pp. 10-11. In its Rebuttal, Allstate maintains that there is a distinction between an impairment rating and a permanent disability, and cites the testimony of Dr. David Clause. *See* Rebuttal, at p. 8. Allstate takes the position that, "[t]o allow Plaintiffs to come forward with accusations of permanent disability without providing medical evidence during trial would be prejudicial to Allstate and in violation of Rules 701 and 403 of the Mississippi Rules of Evidence and the Federal Rules of Civil Procedure." Rebuttal, at pp. 8-9.

The Court notes that, absent a state rule of evidence being so bound up or intertwined with state substantive law that the state rule of evidence should be applied, evidentiary matters are governed by federal, rather than state, law. *See Walker v. George Koch Sons, Inc.*, 2009 WL 837729, *9 n.11 (S.D. Miss. Mar. 27,

2009) (*citing Conway v. Chemical Leaman Tank Lines, Inc.*, 540 F.2d 837, 839 (5th

Cir. 1976)); *see also Weems v. McCloud*, 619 F.2d 1081, 1097 n.38 (5th Cir. 1980).

At this point, it is unclear whether there may be sufficient medical evidence of

permanent disability.[3]  The Court will therefore deny this portion of Allstate's First

Set of Motions *in Limine,* without prejudice to its right to reassert if Plaintiffs do

not adduce sufficient evidence of permanent disability at trial.

## II.  CONCLUSION

Based on the foregoing, the Court concludes that Allstate's Motions should be

granted in part and denied in part.

**IT IS, THEREFORE, ORDERED AND ADJUDGED,** that Defendant

Allstate Insurance Company's First Set of Motions *in Limine* [40] should be and

hereby is **GRANTED IN PART, AND DENIED IN PART**, with certain rulings

reserved as delineated herein.

**IT IS, FURTHER, ORDERED AND ADJUDGED,** that Allstate's requests

to exclude (A) evidence and testimony of medical treatment costs and lost

wages/income of Mrs. Wallace, (I) evidence or testimony of Mrs. Wallace's treating

medical providers which comprises any expert opinions, and (K) any records which

have not been previously stipulated as authentic by both parties as self-

authenticating, are **DENIED.**

---

[3] Allstate supplemented its Rebuttal in support of this portion of the Motions on January 11, 2010, by filing an Attachment [52] with Dr. Clause's deposition transcript.  The Court is not persuaded that Dr. Clause's testimony necessitates granting Allstate's Motion regarding permanent disability, as Allstate contends.

**IT IS, FURTHER, ORDERED AND ADJUDGED,** that Allstate's requests to exclude (E) evidence or testimony from Mr. Scott Belham which reflects any opinions of Mrs. Wallace's treating physicians, (F) evidence or testimony from Mr. Timothy Haller which reflects any opinions of Mrs. Wallace's treating physicians, (G) evidence or testimony of Dr. Horrell Townsend beyond his personal knowledge which reflects any opinions of Mrs. Wallace's treatment, and (M) any evidence or testimony which would tend to support any claim by Mrs. Wallace for permanent disability are **DENIED WITHOUT PREJUDICE** to Allstate's right to reassert.

**IT IS, FURTHER, ORDERED AND ADJUDGED,** that Allstate's requests to exclude (B) evidence of uninsured motorist insurance policy limits, (H) any evidence of offers to compromise, (J) Plaintiffs' or their counsel's mentioning Allstate's use of courtroom technology during voir dire or trial, and (L) evidence or testimony consisting of any claim for lost wages or income by Mr. Wallace are **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED,** that the Court reserves ruling on Allstate's requests to exclude (C) testimony of the Mississippi Highway Patrol investigating officer as to the cause or contributing circumstances of the accident, and (D) introduction of the automobile accident report.

**SO ORDERED AND ADJUDGED,** this the 14th day of January, 2010.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE